IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**HUBERT BABB,**
      **Petitioner,**

**v.**                             **Case No.   3:04cv453/RV/MD**

**JAMES V. CROSBY,**
      **Respondent.**

_____

### <u>REPORT AND RECOMMENDATION</u>

**Before the court is a petition for writ of habeas corpus filed pursuant to Title 28 U.S.C. § 2254 (doc. 1).  Respondent has filed a response (doc. 23, 24) to which petitioner has replied (doc. 29).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.**

## PROCEDURAL HISTORY[1]

On October 13, 1995, petitioner was charged by information in the Circuit Court of Escambia County, Florida with various crimes concerning sexual assaults against his minor daughter.  Because there were questions concerning petitioner's competency to stand trial, he was examined by a psychologist and a psychiatrist. They believed he was competent to stand trial with counsel, but was not competent to represent himself.  A third psychological evaluation resulted in a finding by the court that petitioner was not competent to stand trial, and he was involuntarily hospitalized.  A year later the court found that petitioner's competency had returned, and after petitioner failed to convince the court that the charges against him should be dropped because the charges were old, he went to trial.

When the case finally came to trial the information had been amended three times, and the final charges were (1) capital sexual battery (on a child, defendant's daughter, H. B., when she was under 12 years of age), (2) sexual battery (on a person, H. B., over whom he had familial authority), (3) lewd assault (on H. B. when she was under 16 years of age), (4) lewd assault (on another daughter, K. B., when she was under 16 years of age), and (5) solicitation to engage in an act that would constitute sexual battery (on a person, H. B., over whom he had familial authority when she was under 18 years of age).  A jury found petitioner guilty of all charges. On February 23, 1999 petitioner was adjudicated guilty and sentenced.  The convictions and sentences were affirmed on appeal.  *Babb v. State*, 764 So.2d 776

---

[1]The procedural history through trial is taken from petitioner's brief on direct appeal, (doc. 24, exh. C).  The respondent filed relevant portions of the state court record in three separate filing. Document 11 contains two exhibits - A and B.  Exhibit A comprises the seven volume transcript of proceedings on appeal of petitioner's motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850, including all pre-trial and trial proceedings (with the exception of the trial transcript) and the Rule 3.850 proceeding.  The pages in exhibit A are serially Bates stamped.  Unless otherwise noted, all references to exhibits will be to doc. 11, and will be noted thus: A-123.  Document 24 contains two exhibit - C and D - which are the initial and answer briefs filed on direct appeal. Document 30 contains three exhibits - E, F and G.  Exhibit F contains the trial transcript, and will be noted thus: F-123.

(Fla. 1st DCA 2000). Petitioner subsequently filed a motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850 which was denied in a two part opinion (A-1081-83, 1084-1095). Petitioner's appeal of the order denying relief was unsuccessful. He now brings this federal habeas petition claiming six instances of ineffective assistance of counsel and three claims of trial court error.

## TRIAL AND RELATED PROCEEDINGS[2]

The facts developed at trial were essentially these: H. B., who was 22 years old at the time of trial, was abused by her father, petitioner here, beginning in about 1986, when she was nine or ten years old (F- 76, 297). At first he fondled her, but within a year or two he was penetrating her with his penis (F- 305). She wanted to resist, but he threatened to kill her, and offered her money and a car (F- 301-06). In 1988 someone reported petitioner for physical abuse. The Florida Department of Health and Rehabilitative Services (HRS, now Children and Family Services) became involved. When HRS investigated, H. B. denied that there had been sexual abuse, and later recanted her accusation of physical abuse (F- 323-25). In 1991 she began dating a man whom petitioner did not like and petitioner tried to force her to report the man for sexual assault. Instead, H. B. told the police that petitioner had tried to force her to have sex with him and had threatened to kill her. A few days later she recanted, and told the police that her father had never done anything to her that was sexually inappropriate (F- 326-30). In 1992 she moved away from the area, but she returned in 1995, by which time she had married. She then told law enforcement the whole story about petitioner's sexual abuse because she was concerned that petitioner was now abusing her younger sisters, and she wanted it stopped (F- 333-

---

[2]The facts stated herein are those presented at trial and viewed in the light most favorable to the prosecution. Where there are conflicting inferences and disputes exist, this Court must presume that the jury resolved such conflicts in favor of the prosecution, and must defer to that resolution. *Martin v. State of Alabama*, 730 F.2d 721,724 (11th Cir. 1984).

38).  She admitted at trial that she had told different stories, that she had recanted her charges against her father many times, and that she had even lied under oath at depositions when she denied any inappropriate activity by her father (F- 308, 311, 325, 327, 338).  She said that she did so because petitioner had threatened her, her mother, and her sisters, and because she feared for her life and for those of her family members (307, 310-11).

K. B., H. B.'s younger sister, who was eighteen at the time of trial, was sexually abused by petitioner beginning when she was about 13 or 14, after H. B. had left home (F- 366, 374).  She was never penetrated but petitioner fondled her breasts and buttocks many times (F- 366-67), and she was threatened (F- 362). Petitioner told K. B. he was going to kill H. B.'s new husband, and cut a pumpkin in half with a knife to show how he would do it (F- 360).  K. B. also admitted that she lied to the authorities about the situation and changed her story many times, because every time she and her sisters were placed in HRS custody after a report, HRS would send them back, and petitioner would keep up his threats (F- 381, 402). It was only when petitioner was arrested in 1995 and K. B. felt that he was no longer a threat that she told the whole story (F- 386).

A police officer testified to a limited extent about the victims' demeanor when they made their accusations in 1995 (F- 424-27).  A psychologist testified that the two victims suffered from post-traumatic stress disorder, but he was not asked for an opinion on what caused it (F- 432-58).  Petitioner testified that he had never done any of the things of which he was accused (F- 464-99).  Petitioner's mother testified that in 1995 when petitioner and his daughters were visiting her in Louisiana the girls refused to stay with her but wanted to stay with their father (F- 499-504).  Petitioner's sister testified that she and her family lived across the street from petitioner's family for many years, and that he was a good father who never abused his children.  She

even lived with petitioner's family for a time when her house burned down and the only fighting she ever saw was between H. B. and her mother (F- 505-19).

As mentioned earlier, the jury found petitioner guilty of all charges, and he was sentenced on Count 1 to life in prison without possibility of parole; on Count 2 to thirty years in prison concurrent to Count 1; on Count 3 to fifteen years in prison concurrent to Counts 1 and 2; on Count 4 to fifteen years in prison consecutive to all other sentences; and on Count 5 to five years, concurrent to Counts 1, 2 and 3.

## STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

120 S.Ct. at 1523 (O'Connor, J., concurring).  Under the test just described a habeas court does not examine the State court's ruling to see if it is correct, but examines it only to see if it is reasonable.  More recently, in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Id.*, 123 S.Ct. 1172.   The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  *Neelley v.* Nagle, 138 F.3d 917, 923 (11th Cir. 1998).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the

state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer*, 123 S.Ct. at 1173 (quoting *Williams v. Taylor*, 529 U.S. at 405-06, 120 S.Ct. at 1519-20). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases--indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (quoting *Williams*, 529 U.S. at 405-06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409, 120 S.Ct. at 1521. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson*, 542 U.S. 647, 124 S.Ct. 2736, 2737-38, 159 L.Ed.2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or

"unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001); *see also Carr v. Schofield*, 364 F.3d 1246, 1250 (11th Cir. 2004) (A state court decision involves an unreasonable application of clearly established Federal law if the State court decision "identifies the correct governing Supreme Court legal principle . . . but . . . 'refuses to extend the governing principle to a context in which the principle should have controlled.'" (quoting *Ramdass v. Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000))).

Section 2254(d)(1) requires more than mere error, and more even than clear error on the part of the State court before federal habeas relief may be issued.  *E.g., Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred. . . ."); *Lockyer, supra*, 538 U.S. at 75, 123 S.Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Early v. Packer*, 537 U.S. at 11, 123 S.Ct. at 366 (State court "decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law. . . ."); *Williams, supra*, 529 U.S. at 410-12, 120 S.Ct. at 1522-23 (The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion.").

Only if the federal habeas court finds the State court decision to be contrary to, or an unreasonable application of, clearly established Supreme Court law does it take the final step of conducting an independent review of the merits of the petitioner's claims.  *Neelley*, 138 F.3d 917.  Even so, the writ still will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court); *Jackson*, 112 F.3d at 824-25 (noting that the new statute places a heavier burden on petitioner to overcome the presumption of factual correctness).

## PETITIONER'S GROUNDS FOR RELIEF

Petitioner presents this court with nine grounds for relief, six of which are based on claims of ineffective assistance of counsel. The court has rearranged the order for convenience of review.

1. <u>Ineffective assistance of counsel</u>

As will be discussed under the following subheadings, petitioner asserts six separate claims that he was denied his constitutional right to the assistance of counsel because his counsel's representation was ineffective.

**Clearly Established Federal Law**

With the exception of petitioner's Ground 1 which will be separately discussed, the parties do not dispute that *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) governs the analysis of petitioner's ineffective assistance claims.  Under the *Strickland* standard, in order to prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that:  (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for  counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.*, 466 U.S. at 694, 104 S.Ct. 2052.

"The purpose of ineffectiveness review is not to grade counsel's performance." *Chandler v. United States,* 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*).  In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. *Chandler* at 1314.  "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.), *cert. denied*, 513 U.S. 899, 115 S.Ct. 255, 130 L.Ed.2d 175 (1994).  In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  As the Eleventh Circuit has emphasized:

> We must avoid second-guessing counsel's performance:  "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance."  *Waters* [*v. Thomas*, 46 F.3d 1506], 1522 (en banc).  Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness.

*Chandler* at 1314 (footnote omitted).  Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective

representation.  Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment.  *Chandler* at 1314 n.15.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  466 U.S. at 693, 104 S.Ct. at 2067.  Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.*, at 694, 104 S.Ct. at 2068.  Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987).  In applying *Strickland* the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs.  *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).

**Federal Review of State Court Decision.**

a.  Failure to strike prejudiced juror (Petitioner's Ground 1).

Petitioner's first contention is that he was denied the effective assistance of counsel because his attorney failed to strike an admittedly biased juror.  He contends that jury panel member Tonya Edwards stated twice that, because she or someone close to her had been the victim of a sexual crime, she could not be fair in the trial of the case, but that counsel did not use either a for-cause or a peremptory strike against her.  Petitioner exhausted this claim in the state court by presenting

it in a motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850.  The court held two evidentiary hearings and, applying the *Strickland* standard, found in a written opinion that counsel's decision to accept juror Edwards was a tactical decision, and that it was reasonable because counsel considered the fact of the juror's stated bias, but accepted her for sound strategic reasons (A-1084-1095).

Petitioner here argues that this finding - that counsel's action was a strategic decision- is unsupported, and that defense counsel obviously lied during the evidentiary hearing in order to cover his own incompetence.  Petitioner further argues that leaving an unequivocally biased juror on a jury *cannot* be justified as a reasonable strategic decision.  Respondent dismisses this argument out of hand, saying only that the trial court found that there was a reasonable strategic decision for leaving Ms. Edwards on the jury, and that this was not an unreasonable application of *Strickland*.  Respondent offers no further analysis.

Respondent's *ipso facto* argument is singularly unhelpful.  It is true that where counsel makes reasonable strategic decisions in a trial, a habeas court will not look behind those decisions, *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, and that this defeats a claim of deficient performance.  However, whether the record here supports the state court's conclusion that defense counsel made a *reasonable* strategic decision is not patently obvious.  Moreover, there is federal precedent to support petitioner's claim that a strategy is unreasonable as a matter of law when that strategy involves leaving a person on a jury who openly admits bias.  Because the Eleventh Circuit has not addressed this issue directly, the first question this court must address is whether there is a *per se* rule to the effect that leaving an admittedly biased person on the jury cannot be excused by an asserted strategic decision.

### i.  Was counsel *per se* ineffective?

It is well recognized that a criminal defendant has a due process right to a competent and impartial tribunal, *i.e.*, "a jury capable and willing to decide the issue solely on the evidence before it."  *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).  Due process requires that a defendant have an opportunity post-trial to prove the existence of actual and identifiable prejudice of a juror which compromised the ability of the particular jury that heard the case to adjudicate fairly. *Id.*, *Chandler v. Florida*, 449 U.S. 560, 101 S.Ct. 802, 66 L.Ed.2d 740 (1981); *Howard v. Davis*, 815 F.2d 1429, 1431 (11th Cir. 1987); *Rogers v. McMullen*, 673 F.2d 1185 (11th Cir. 1982).  A jury's verdict must be based solely upon evidence developed at trial. *Smith v. Phillips*, 455 U.S. at 217, 102 S.Ct. at 946.  As the United States Supreme Court noted in *Turner v. Louisiana*, 379 U.S. 466, 472-73, 85 S.Ct. 546, 549-50, 13 L.Ed.2d 424 (1965),

> [i]n the Constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the "evidence developed" against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel.

A defendant has the burden of proving juror partiality or bias and must do so by a preponderance of credible evidence.  *United States v. Winkle*, 587 F.2d 705, 714 (5th Cir. 1979);[3] *United States v. Riley*, 544 F.2d 237, 242 (5th Cir. 1976).

Here the question of Ms. Edwards' bias was established on the record.  During voir dire the prosecution was examining the jury venire concerning whether they or someone close to them had "ever been a victim of a sexual-related crime[,]" and if so, how long ago (F-102).  Several responded, and the prosecutor named them as they raised their hands, including:

MS. SMITH (prosecutor):   Ms. Edwards.

---

[3]In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

PROSPECTIVE JUROR:   Eight years now.

(F-104).  After additional panel members identified themselves and gave a period of time, the prosecutor continued:

MS. SMITH:   * * * *  But is there anyone here who feels that because on (sic) that experience, they would not be able to be fair and impartial?  Okay.  That's Mr. Garlock.  Okay.  Ms. Edwards.  Mr. Harrison.  Anybody else?  Mr. Broxton. * * *

(F-105-06).  No follow-up questions were directed at panel member Edwards on that particular response.  Later in voir dire the prosecutor asked about child physical abuse:

MS. SMITH: * * * * But is there anyone here who they themselves or someone close to them has ever been physically abused, especially as a child?

* * *

MS. SMITH: Okay.  Ms. Edwards, how long ago?

PROSPECTIVE JUROR:  Eight.

(F- 113-14).  The prosecutor then went on to other issues, and did not ask if any juror either could or could not be fair based on an experience of child physical abuse.

Defense counsel's voir dire also raised a response from Ms. Edwards.  He explored whether the panel members generally would be uncomfortable sitting in a case involving child sexual abuse.  After some sparring with the prosecution and a ruling by the court, counsel asked:

MR. FARRAR: In regard to what the judge just indicated, when I ask you the comfort level that you have for serving as a juror in this type of case with these type (sic) of charges, I ask that, would it – are you uncomfortable to the extent that you believe it would disable you from rendering a fair and impartial verdict based upon the facts as they are shown at trial?  Is there anyone that's that uncomfortable?  I know, Mr. Harrison, you've indicated.  Anyone else?

\* \* \*

MR. FARRAR: Mr. Harrison.  And next door to you, Ms. Edwards?

PROSPECTIVE JUROR: Yeah.

(F-138-139).  Counsel inquired no further on that issue.

When the names were drawn counsel successfully moved to strike Mr. Harrison for cause (F-176).  Defense counsel used seven of his ten peremptory strikes (F-182), and after three alternates were selected, the defendant, who was at the bench during the actual selection process, was addressed by the court:

THE COURT: Okay.  Mr. Babb, I know your lawyer's been going back and forth and talking to you.

THE DEFENDANT: Yes, sir.

THE COURT: But we've got a - - it's going to be a six-person jury with three alternates, but ultimately it's going to be six people making the decision.  We've got Tonya Edwards.  We've got Sherry Seale.  We've got Theresa Barrow.  We've got Richard Jones.  We've got Thomas Scott.  We've got Rhonda Kalis.  Those are the six people on the jury.  And we have alternate no. 1, Rosie Howell.  We've got alternate no. 2, Vera Meacham.  We've got alternate no. 3, Daniel Krikstone.  Those - - that's where we are.

Your attorney has used seven strikes, has got three left on the jury.  And used - - so far has used no strikes on the alternates.  He says they're acceptable to him. I want to make sure that ya'll have had an opportunity to discuss this before we pick this jury.

THE DEFENDANT: Yes, sir.  He's talked to me about it as he picked them out, and I kind of picked them out at the same time, too, so - -

THE COURT: So you don't have a problem with any of those nine?

THE DEFENDANT: No, sir.

THE COURT:  Okay.  Let's go with it.

(F- 185-86).

Indeed, the state court's ruling acknowledged that Ms. Edwards had a past history as a victim of sexual abuse and responded in *voir dire* that as a result of her past experience, she thought she could not be fair and impartial (A-1093-95). But because there was no objection made at trial, petitioner could not raise the issue on direct appeal. His only avenue for relief, therefore, is to show that his counsel was ineffective in failing to use a strike against Ms. Edwards.

It is well settled that where a trial judge refuses to strike a juror for cause, the defendant is entitled to a new trial because "[a]t stake is the party's right guaranteed by the Sixth Amendment to an impartial jury." *United States v. Nell*, 526 F.2d 1223 (5th Cir. 1976) (remanding for new trial where court refused to strike biased juror for cause and forced defense to use a peremptory strike). That is not necessarily the case, however, when the error is not by the court, but by counsel. "It is, of course, well settled that the fact that constitutional error occurred in the proceedings that led to a state-court conviction may not alone be sufficient reason for concluding that a prisoner is entitled to the remedy of habeas." *Williams*, *supra*, 529 U.S. at 375, 120 S.Ct. at 1503. *See Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 91976) (holding that where the state provides for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas relief on the ground that evidence obtained in an unconstitutional search was introduced at trial). Thus, requiring a new trial on direct appeal based on deprivation of a constitutional right does not mandate the same result on collateral attack.

The Supreme Court has given guidance on cases where ineffective assistance of counsel is presumed and prejudice need not be proven. On the same day that *Strickland* was decided, the Court decided *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), in which it gave examples of cases where failings of counsel justify a *per se* presumption of ineffectiveness. These include instances

where there is a complete denial of counsel at a critical stage, or where counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, or where counsel is appointed under circumstances in which no lawyer could likely give effective representation. *See also Bell v. Cone*, 535 U.S. 685, 695-96, 122 S.Ct. 1843, 1851, 152 L.Ed.2d 914 (2002) (discussing the three *Cronic* situations where no proof of prejudice would be required, and emphasizing that in the second *Cronic* example, there must be a *total* failure to subject the prosecution's case to meaningful adversarial testing). These examples do not give precise guidance here, because the state court found no deficient performance. Still, the *Cronic* criteria all point to one common factor - prejudice need not be shown where in effect the defendant has no lawyer at all. The only other possible form of *per se* ineffectiveness identified by the Supreme Court is actual and active conflict of interest. *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067. Thus, other than in these specific *per se* kinds of cases, the general rule of *Strickland* applies, and a defendant must show in addition to deficient performance, that he was prejudiced by counsel's error. In short, the Supreme Court has not said that counsel leaving a biased juror on a jury is *per se* ineffective.

Turning to Eleventh Circuit precedent, the court in *Smith v. Gearinger*, 888 F.2d 1334 (11th Cir. 1989) addressed an ineffective assistance of counsel claim where counsel allowed two disqualifiable jurors to sit. The jurors were disqualifiable under Georgia law based on an alleged familial relationship with the victim and with a prosecution witness. The state court did not develop evidence on whether the relationship existed, or if there was such a relationship, whether counsel was aware of it, or if he was, whether he had a reasonable basis for not striking the jurors. The *Gearinger* court reversed the district court's denial of habeas relief, stating that an evidentiary hearing was necessary because "[a]ssuming that trial counsel knew or had reason to know that the jury was composed in part of persons disqualifiable

under Georgia law, *and had no reasonable basis for failing to strike these jurors*, we find that counsel's performance at the *voir dire* would fall outside the range of professionally competent assistance."  888 F.2d at 1338 (emphasis added).  The clear implication in this case is that the reverse would be true: if counsel had a reasonable basis for not striking the disqualifiable jurors, his performance would not be deficient under *Strickland*, and the question of prejudice would not need to be addressed.

While *Gearinger* is helpful, it is not directly on point.  The jurors in that case, assuming they were related as defendant claimed, had not disclosed any bias. Under Georgia law they were disqualifiable, but they did not state on *voir dire* that they were in fact biased.  Even the *Gearinger* court noted that under Georgia law a new trial is mandated if a disqualifiable juror sits, "[p]resumably, . . . because such jurors can be expected to sympathize with the victim and influence the other jurors against the defendant."  *Id.*  The court also noted that under Georgia law the state can rebut the presumption of partiality.  Thus, *Gearinger* does not support the *per se* rule that petitioner advances, but it does not definitively negate it either.

In another instructive Eleventh Circuit case, *Jackson v. Herring, supra*, defense counsel failed to raise a *Swaim v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) objection when the prosecution used its peremptory strikes to exclude all blacks from the jury.  The Court agreed that counsel's performance had been deficient because he advanced nothing to show that this was "a studied, tactical or strategic decision" or "a reasonable exercise of professional judgment." 42 F.3d at 1360.  This is again an indication that if counsel *had* been found to have been using a reasonable trial strategy, his performance would not have been deficient, and the court would not need to address the question of prejudice.

Similarly, In *Hollis v. Davis*, 941 F.2d 1471 (11th Cir. 1991) the court held that prejudice sufficient to overcome a procedural default was shown where counsel did

not challenge the racial make-up of the jury pool.  He effectively admitted that he was unaware that a constitutional challenge against the jury pool would have succeeded based on well established precedent.  The court reasoned that it was "impossible to conclude from [counsel's] statement that he had made a reasoned, professional judgment that not raising the issues was in Mr. Hollis' interest."  This case is instructive because it would allow counsel to ignore a racially unconstitutional jury if he had a sound tactical reason for doing so.  Indeed, such reasoning is more closely akin to the facts in this case because racial discrimination in jury pool selection had been held to be constitutionally prejudicial.  *See, Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d  598 (1986) (grand jury); *Avery v, Georgia*, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed.2d 1244 (1953 (petit jury).  Nevertheless, none of these Eleventh Circuit cases directly address the factual situation present here.

Other Circuits that have touched on the issue have reached similar results: *Cartwright v. Dretke*, 103 Fed.Appx. 545 (5th Cir. 2004) (no ineffective assistance of counsel where counsel strategically accepted juror who expressed strong belief in death penalty but also expressed skepticism at informant testimony) (unpublished opinion); *Johnson v. Armontrout*, 961 F.2d 748 (8th Cir. 1992) (absent the showing of a strategic decision, failure to request the removal of a biased juror can constitute ineffective assistance of counsel); *United States v. Quintero-Barraza*, 78 F.3d 1344 (9th Cir. 1996) (failure to strike *possibly* biased juror was based on tactical decision). In none of the foregoing cases, however, has a court held that strategy will excuse leaving an admittedly biased juror like Ms. Edwards on a jury.

The only Circuit Court decision that has directly addressed this issue comes from the Sixth Circuit, which has held that the petitioner's proposed *per se* rule is the law.  The defendant in *Hughes v. United States*, 258 F.3d 453 (6th Cir. 2001) sought relief under 28 U.S.C. §  2255, claiming that he was entitled to a new trial because his counsel was ineffective in not striking a juror who stated in *voir dire*

that she did not think she could be fair.  Specifically, when asked about relationships with law enforcement personnel and whether such relationships might prevent her from being fair, a panel member, Orman, answered: "I don't think I could be fair." Orman was not questioned directly at any later time.  When the panel was asked generally whether they would find a witness more credible if the witness were a police officer, Orman did not respond.  Mr. Hughes told his lawyer that he wanted Orman struck from the jury, but counsel made no attempt to comply, nor did counsel exhaust his peremptory challenges.  The *Hughes* court found that Mr. Hughes was entitled to a new trial based on ineffective assistance of counsel.  The court first noted that, under *Strickland*, counsel is entitled to considerable deference, and that "[a]n attorney's  actions during *voir dire* are considered to be matters of trial strategy."  258 F.3d at 457.  It further noted that "[a] strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness."  *Id.* Moreover, because of the Sixth Amendment right to trial by an impartial jury, a defendant is entitled to a new trial (on direct appeal) "if an impaneled juror's honest responses to questions on *voir dire* would have given rise to a valid challenge for cause."  *Id.* (citing *McDonough  Power Equip., Inc.*, 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984)).

The *Hughes* court surveyed cases in which members of a jury panel had expressed doubts about their ability to be fair, but in which the Supreme Court had not found manifest error, because in each case there was no clear, firm statement of bias, citing *Patton v. Yount*, 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984) (where some jurors stated that they had at some time prior to trial formed some opinion of defendant's guilt), and *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 587 (1975) (where one juror said that *right then* she would find defendant guilty, and where another said that defendant's prior convictions would probably

influence her verdict).  The *Hughes* court then distinguished *Patton* and *Murphy* based on juror Orman's "clear declaration that she did not think she could be a fair juror[,]" and concluded that because there was no follow-up attempt at clarification or rehabilitation, there was no ambiguity as to her bias.  *Id.* at 459.

Next addressing the legal issue presented here, the *Hughes* court held that the question of whether to seat a biased juror is not a legitimate discretionary or strategic decision that counsel can reasonably make because "[i]f counsel's decision not to challenge a biased venireperson could constitute sound trial strategy, then sound trial strategy would include counsel's decision to waive, in effect, a criminal defendant's right to an impartial jury."  *Id.* at 463.  This would be a structural defect that defies harmless error analysis, and "to argue sound trial strategy in support of such a structural defect seems brazen at best."  *Id.*  Prejudice under *Strickland* was therefore presumed, and a new trial was granted.

The *Hughes* court thus based its *per se* rule on a finding that leaving an admittedly biased juror is a structural defect.  It concluded that because the Supreme Court had held in *Tumey v. Ohio*, 2773 U.S. 510, 47 S.Ct. 437, 71 L.Ed.2d 749 (1927) that the presence of an impartial trial judge is a structural defect, and because the Eighth Circuit had reached the same result concerning biased jurors in *Johnson v. Armontrout*, *supra* (but glossing over the Eighth Circuit's statement implying that trial strategy can justify accepting a biased juror), the same was true in *Hughes*.

In a similar case the court in *Quintero v. Bell*, 256 F.3d 409 (6th Cir. 2001) held that counsel's failure to object to jurors who had served on an earlier panel which convicted the defendant's codefendants was a structural error.  The Supreme Court remanded that decision for consideration in light of *Bell v. Cone, supra*, and the circuit court reaffirmed its decision, this time determining that counsel's failure to object to the tainted jurors satisfied one of the *Cronic* categories, in that counsel did

not subject the prosecution's case to meaningful adversarial testing. *Quintero v. Bell*, 368 F.3d 892 (6th Cir. 2001) (*Quintero II*).[4]

Outside the Sixth Circuit, *Hughes* has received scant attention.  The only exception by a federal court is *McCollough v. Bennett*, 317 F. Supp. 2d 112, (N.D. N.Y. 2003), which found *Hughes* controlling.  That case was reversed, however.  The Second Circuit found that the allegedly biased juror's statement of bias was equivocal at best, and was more probably a simple misstatement given his numerous earlier statements indicating that he was not biased.  *McCullough v. Bennett*, 143 Fed.Appx. 379 (2nd Cir. 2005) (unpublished opinion). The court therefore held that the facts did not justify reliance on *Hughes*, and the question of whether *Hughes* would be adopted in the Second Circuit was not addressed.

This court does not find *Hughes* persuasive.  The structural defect category of prejudice referred to by the *Hughes* court is not the appropriate test in an ineffective assistance of counsel case. *Cronic, supra; Bell v. Cone,* 535 U.S. at 695, 122 S.Ct. at 1850 (confirming the very limited circumstances in which the *per se*

_____

[4]The Warden in *Quintero II* again sought certiorari in the Supreme Court, which was denied. *Bell v. Quintero*, --- U.S. ---, 125 S.Ct. 2240 (2005).  Justice Thomas, joined by Chief Justice Rehnquist, filed a dissent, arguing that the Sixth Circuit had once again placed form over substance in relying on its holding that a structural defect created prejudice *per se* in an ineffective assistance of counsel claim.  Explaining that there is no close correlation between counsel's performance and whether a trial was infected with structural error, Justice Thomas noted:

> For example, even competent counsel may fail to object to a biased trial judge or to the exclusion of grand jurors on the basis of the defendant's race.  The structural nature of these defects . . . says only that a serious error occurred at trial, not that the error resulted from counsel's ineffective assistance.

125 S.Ct. at 2242.  This is interesting for several reasons.  First and foremost, it comes from a dissent, and establishes no precedent.  Second, the fact that the Supreme Court denied certiorari means nothing one way or the other.  It simply means that fewer than four members of the Court deemed it desirable to review a decision of the lower court as a matter of sound judicial discretion. *State of Maryland v. Baltimore Radio Show*, 338 U.S. 912, 70 S.Ct. 252 (1950). *See also* Rule 10, Rules of the Supreme Court (noting that review by certiorari is a matter of judicial discretion granted only for compelling reasons).  Third, contrary to Justice Thomas' reasoning, the *Quintero II* court did not rely on a structural defect.  It simply held that counsel had entirely failed to challenge the prosecution. Fourth, it emphasizes the lack of resolution by the Supreme Court of the question posited here: is there *per se* prejudice where counsel allows a biased juror to sit?
Case No: 3:04cv453/RV/MD

ineffectiveness rule applies: "[*Cronic*] identified three situations implicating the right to counsel that involved circumstances so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.") (internal quotations omitted); *Smith v. Robbins,* 528 U.S. 259, 287, 120 S.Ct. 746, 765, 145 L.Ed.2d 756 (2000) (confirming that *Cronic* sets out the only categories of ineffective assistance of counsel cases that presume prejudice); *Birt v. Montgomery,* 709 F.2d 690 (11th Cir. 1983) ("On collateral attack in federal court, however, when the challenge has been waived under state law, the burden of demonstrating prejudice . . . is much greater than the presumption accorded the violation when raised prior to trial."), 709 F.2d at 699 (holding that counsel was ineffective in challenging underrepresentation of blacks on the jury panel but that a hearing was necessary to determine whether the defendant had been prejudiced).  Moreover, the Eleventh Circuit has strongly implied that counsel's strategy can excuse accepting a presumptively racially biased jury or presumptively biased jurors.  This court therefore concludes that there is no *per se* rule applicable to this case, that prejudice cannot be presumed, and that an analysis pursuant to *Strickland* is warranted.

            ii.    **<u>Review of state court's decision concerning counsel's performance.</u>**

The clearly established federal law on ineffective assistance of counsel is *Strickland*, and the state court analyzed petitioner's claim under that standard.  The facts of this case are not materially indistinguishable from the facts in *Strickland*, so this court must take the third *Williams* step and determine whether the state court either made an objectively unreasonable application of *Strickland's* governing principles, or made a decision that was based on an unreasonable determination of the facts in light of the evidence presented.

The first part of a *Strickland* analysis requires the court to determine whether counsel's performance was deficient.  In doing so, the court must look at the holding of the state court to determine whether it meets the reasonableness standard of

*Williams*. The state court held two evidentiary hearings on this issue (and on another, discussed below). At the first hearing petitioner, who was represented by appointed counsel, testified that he remembered the events at *voir dire.* He said that during jury selection at the bench he did not connect Ms. Edwards' name to the person who had earlier indicated that she could not be fair. He acknowledged that his attorney discussed the various potential jurors with him, but to him it was just a jumble of 60 unfamiliar names whose faces meant nothing to him, and that when Ms. Edwards was named as a juror he did not connect the name to a face. He also testified that he and his attorney had some general pre-trial discussions on not wanting jurors with prior sexual abuse experience, and that if he had appreciated the fact that "Tonya Edwards" fit that category and was the one who said she could not be fair, he would have insisted that she be struck. (A-958-963).

Defense counsel, who had been practicing law since 1986, and who had tried between twenty-five and thirty criminal jury trials, testified that he had no specific memory of jury selection in this case, but that his usual practice was to have a single jury seating chart and to share it with his client, discussing each panel member as their names came up. He felt sure that he had done the same at petitioner's trial. He did not recall any discussion between himself and the petitioner concerning Ms. Edwards, and had no independent recollection of why he may have struck certain jurors. Nevertheless, he was certain that he would not have accepted a juror if petitioner had told him not to. He and petitioner communicated throughout the process, and petitioner was at the bench for the final selection process (A-988-1000). Counsel admitted that it is generally not a good practice to accept a juror who has professed bias. With respect to Ms. Edwards, counsel could not remember why he had accepted her, or what discussions he may have had about her with petitioner (A-1001-1006). When pressed by the judge (who had not presided at trial) as to exactly why he had not challenged Ms. Edwards, all counsel could say was that he discussed the panel members with petitioner, and found Ms. Edwards to be

acceptable (A-1006-1008).  Counsel indicated that he thought he had the seating chart in his file, but had not been asked to bring the file to the hearing.

The court adjourned the hearing and took the matter under advisement, but directed counsel to review his file for his jury seating chart, to provide copies to the parties, and to inform them whether his review refreshed his memory.  Defense counsel did so, and wrote a letter stating that his review of the seating chart did not refresh his recollection of events at *voir dire*.  The parties filed written comments concerning the chart and counsel's response, and the court determined that it should hold a further hearing.  The second hearing was held on March 11, 2003, but before a third judge who had no prior involvement in the case.  Defense counsel testified that he had now reviewed his chart, the transcript of the *voir dire*, and the transcript of the first hearing, and that his recollection had to some degree been refreshed.  He recalled that at the petitioner's trial he had wanted a diverse jury with some independent thinkers - people who would consider the facts.  He was hoping for an unbiased jury, but his goal was to find a jury that would not have any preconceived notions regarding the petitioner (A-1053).  He further testified that his practice was to discuss panel members as their names came up, and before final selection to ask the client whether there were any panel members with whom the client was uncomfortable, and that this was done in this case (A-1057).  His chart notes reflected that Ms. Edwards was black, was a cashier, and had served on a hung jury, which he would have considered significant (A-1067-1067).  He also wrote "cause" under her name (A-1069).  Considering the overall panel, counsel felt that Ms. Edwards fit within his acceptable range (A-1067).

Based on this evidence the state court ruled as follows:

> With regard to subclaim seven (ineffective assistance for failure to strike a biased juror), the defendant has also failed to carry his burden. The defendant testified at the October 18, 2002, evidentiary hearing that he and Mr. Farrar had discussed prior to jury selection that it would be advisable to not select a juror who had a past history involving a sex crime.  The defendant testified that Mr. Farrar was visibly confused

during the jury selection process and negligently allowed Tonya Edwards to serve as a juror in his case after she indicated that she was a past victim of sexual abuse and as a result she could not be fair and impartial.

Mr. Farrar testified at the same hearing that the defendant was present at jury selection and actively participated in the process.  Mr. Farrar testified that he discussed with the defendant the type of jurors he hoped to select and several juror selection strategies.  Counsel also testified that he did not have any independent recollection of why he selected certain jurors and did not recall what was discussed with the defendant in regard to juror Edwards.

At the March 11, 2003 hearing on this issue, Mr. Farrar testified that his goal in this case was to select a diverse jury composed of independent thinkers (i.e. jurors without preconceived notions regarding the defendant).  Although counsel again testified that he had no independent recollection of jury selection in this case, he also testified that it is his common practice to actively discuss each individual juror with a defendant during the selection process and discuss any concerns a defendant may have about a particular juror. Mr. Farrar also testified that in juror Edwards' case, his trial notes reflected that she met the diversity and independent thinker criteria that he concluded would be indicative of a favorable juror (she was an African American female and had served on a hung jury).  Finally, counsel testified on cross-examination that due to juror Edwards' indication that she had been the victim of a past sexual crime, he noted on his juror seating chart that she could be challenged for cause and rejected such a challenge.

As indicated above, the court finds that the defendant has failed to carry his burden.  Although the wisdom of counsel's decision may be debatable, to warrant relief an error must be, "measurably outside the range of professionally acceptable performance."  *State v. Lewis*, 838 So. 2d 1102, 1117 (Fla. 2002) (citation omitted).  Even though counsel's decision not to strike juror Edwards is open to debate, it was a reasonable strategic decision.  Counsel was aware of Edwards' past history as a victim of sexual abuse and her response in *voir dire* that as a result of her past, she thought she could not be fair and impartial. Counsel considered challenging her for cause on these grounds and rejected that avenue in favor of retaining Ms. Edwards because she met

counsel's indicia of an ideal juror, with counsel assigning significant weight to the fact that she had previously served on a hung jury. *See State v. Bolender*, 503 So. 2d 1247, 1250 (Fla. 1987)(holding that, "[s]trategic decisions do not constitute ineffective assistance if alternative courses of action have been considered and rejected"). Given the facts of this case, counsel's strategic decision was reasonable under the circumstances and the defendant has not established that no competent counsel would have allowed juror Edwards to remain on the jury. *See Skrandel v. State*, 830 So. 2d 109, 115 (Fla. 4th DCA 2002) (holding that a defendant "must establish that no competent counsel would have taken the action that his counsel did take")(citations omitted).

(A-1093-94) (footnotes omitted).

It is well settled that if a court finds that counsel makes a reasonable strategic decision at trial, that decision will not be second-guessed. *Strickland*, 466 U.S. at 681, 104 S.Ct. at 2052 ("[S]trategic choices must be respected if they are based on professional judgment); *Chandler v. United States*, 218 F.3d at 1313. Here the state court found, as fact, that defense counsel made a strategic decision to accept Ms. Edwards. "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(e)(1)." *Miller-El v. Cockrell, supra*, 537 U.S. at 340, 123 S.Ct. at 1041; *Callahan v. Campbell*, --- F.3d ---, 2005 WL 2446088 at *25 (11th Cir. Oct. 5, 2005) ("Not only must the factual determination have been unreasonable, but the state court's factual findings must be shown unreasonable by clear and convincing evidence."). Defense counsel noted "cause" by Ms. Edwards' name on his seating chart, which means he was aware that she was potentially subject to challenge, but he also noted that she had served on a hung jury. He explained that he wanted a jury of independent thinkers, and that this must have factored into his decision. Finally, the evidence showed that counsel

discussed each juror with the petitioner, and there was no disagreement on accepting Ms. Edwards.  Granted, as a layman petitioner is not held to be an expert in picking a jury, but the evidence supports a finding that counsel considered the positive and negative aspects of Ms. Edwards serving as a juror.  The trial court found, as fact, that "[c]ounsel considered challenging [Ms. Edwards] for cause on these grounds and rejected that avenue in favor of retaining Ms. Edwards because she met counsel's indicia of an ideal juror, with counsel assigning significant weight to the fact that she had previously served on a hung jury."  Although reasonable jurists could differ, this court cannot say that the state court's factual finding was objectively unreasonable in light of the evidence presented .

That does not dispose of the issue, however.  A finding that counsel made a strategic decision is not the same as a finding that the strategy was a sound one based on professional judgment, which is the next issue this court must consider. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  "Inquiries into strategic or tactical decisions challenged as ineffective assistance of counsel involve both a factual and a legal component. . . . [T]he question of whether the strategic or tactical decision is reasonable enough to fall within the wide range of professional competence is an issue of law ."  *Provenzano v. Singletary*, 148 F.3d 1327 (11th Cir. 1998).  Strategic choices made after thorough investigation of law and facts relevant to plausible options are "virtually unchallengeable."  *Id.* at 1332 (quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066).  To overcome that very high hurdle, petitioner must show more than that leaving Ms. Edwards on the jury was a bad idea, and that most lawyers would have done otherwise.  "In order to show that an attorney's strategic choice was unreasonable, a petitioner must establish that no competent counsel would have made such a choice."  *Id.* at 1332.  This, petitioner cannot do.  Accepting a biased juror would on its face seem like a very bad idea, but this court was not present when this jury was seated, and the state court found counsel's decision to be reasonable, if unorthodox.  Defense counsel's thirteen years of criminal trial

experience is also due consideration, because "the more experienced an attorney is, the more likely it is that his decision to rely on his own experience and judgment . . . was reasonable under the circumstances." *Id*. Counsel's "position in reaching [his] conclusions is strikingly more advantageous than that of a federal habeas court in speculating post hoc about his conclusions. His knowledge of local attitudes, his evaluation of the personality of the defendant and his judgment of the compatibility of the available testimony and the jury's impression of defendant, his familiarity with the reactions of the trial judge under various circumstances, his evaluation of the particular jury, his sense of the 'chemistry' of the courtroom are just a few of the elusive, intangible factors that are not apparent to a reviewing court, but are considered by most effective counsel in making a variety of trial and pretrial decisions." *Stanley v. Zant*, 697 F.2d 955, 970 (11th Cir. 1983).

These comments bear consideration here. A trial involving sexual abuse of children is obviously a highly emotional one. Such behavior, and particularly such behavior by a father against his own children, is abhorrent to all decent people. Hence, a statement of bias in such a case can never be taken lightly by the defendant's counsel. A woman on the venire who identifies herself as a victim of sexual abuse, or as being close to such a victim, and who overtly affirms her bias does not belong on a jury in a sexual abuse case absent the most compelling reasons. However, this court did not participate in *voir dire*, and did not observe Ms. Edwards, either when she indicated she could not be fair, or at any other time. This court therefore does not know what overall impression she made on defense counsel, or on the defendant himself, since petitioner told the trial judge he was happy with the members of his jury and that he had helped in choosing them. Petitioner's participation in jury selection by itself would not constitute a waiver of his attorney's allegedly unprofessional decision, but it shows that petitioner did not demand that Ms. Edwards be struck, or that she made such a negative impression

on petitioner that she was in the forefront of his mind when he and his attorney discussed her.

Trial counsel also must weigh intangibles.   Counsel must decide what evidence to present, for example, a decision that can always be questioned. Counsel can also decide not to object to otherwise inadmissible evidence because such evidence may add something to his theory of the case.   In this case, counsel may have allowed Ms. Edwards to sit because during the course of *voir dire* he saw or sensed something about her that convinced him that she would in fact be fair. Decisions that rely on these types of nuances are left to the discretion of counsel, and are given a strong presumption of correctness, without the distorting effect of hindsight.   Finally, "cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between, and cases in which deliberate strategic decisions have been found to constitute ineffective assistance are even fewer and farther between."   *Provenzano*, 148 F.3d at 1332. Petitioner has failed to carry the burden which the Eleventh Circuit succinctly summarized in its recent decision in *Callahan v. Campbell, supra*, 2005 WL 2446088:

> A habeas petitioner bears the burden of proving counsel's performance was ineffective and that burden is a heavy one. Petitioner must establish that no competent counsel would have taken the action that counsel did take. The presumption of reasonableness is even stronger when we are reviewing the performance of an experienced trial counsel. (Internal quotations and citations omitted).

*Id.* at * 32.  For all these reasons, this court concludes that petitioner has not carried his burden of showing that the state court was unreasonable in finding that counsel made a reasonable strategic decision when he accepted Ms. Edwards as a juror.  He has therefore not met the first *Strickland* requirement of showing that his attorney's performance was deficient, and he is not entitled to habeas relief.

### iii.    Was counsel's performance, if deficient, prejudicial?

The foregoing result was not reached without some hesitation.  As shown above, the Eleventh Circuit has never directly held that trial strategy justifies accepting a juror who openly states and then affirms her bias.  If the Sixth Circuit's reasoning in *Hughes* is correct, ineffectiveness is presumed, and petitioner would be entitled to a new trial.  Furthermore, it would not be difficult for this court to find that the state court's factual finding was in fact unreasonable, because defense counsel's testimony was replete with acknowledgments that he had no recollection of the *voir dire*, because he never directly stated a reason, much less a convincing reason, for leaving an admittedly biased sex-offense victim on this jury, and because he seemed to have cobbled together an after-the-fact excuse for accepting Ms. Edwards as a juror.  Moreover, this court could almost as easily reject the state court's finding that counsel's strategic decision to accept Ms. Edwards was a reasonable one.  The state court found that counsel had exercised reasonable professional judgment based on counsel's testimony that Ms. Edwards met his ideal juror criteria as an independent thinker.  This is not the strongest of logic.  An independent thinker who says she is biased against a defendant based on her prior experience as a sex crime victim is not likely to be an independent thinker where it matters most.  Even in the face of a statutory mandate to give considerable deference to state court decisions, it would not be difficult for this court to conclude that the state court unreasonably applied *Strickland* when it determined that petitioner failed to establish deficient performance.

If the court were to so conclude, petitioner's claim of prejudice would deserve a very close look, especially since the state court did not address this prong. Therefore, for the sake of completeness, the court will review petitioner's claim on the merits.  This review assumes, contrary to the court's finding above, either that the state court's factual finding was objectively unreasonable in light of the evidence presented, or that the state court unreasonably found that counsel's strategic

decision to accept Ms. Edwards was a reasonable one.   If either of these determinations were made by this court, petitioner would meet the first *Strickland* prong, and would then have to show prejudice.

In order to meet *Strickland*'s prejudice prong, petitioner must show more than that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067.  In *Hollis, supra*, the court held that if counsel did not have a strategic reason for not objecting to racial bias in jury selection, prejudice would be presumed.  The same reasoning would have force here, and in such a case, no further analysis is needed.

Without such a presumption, the petitioner must show that a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonably probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.  Reported cases generally address this issue in terms of the strength of the prosecution's case.  *See, e.g., Callahan v. Campbell, supra* (overwhelming evidence of guilt refuted possibility of prejudice from multiple claimed instances of ineffective assistance of counsel); *Crawford v. Head*, 311 F.3d 1288, 3121 (11th Cir 2002) (finding no prejudice in large part because of the "strength of the evidence both of Crawford's guilt and of the aggravating circumstances"); *Messer v. Kemp*, 760 F.2d 1080 (11th Cir. 1985) (where counsel made little effort in the guilt phase of a death sentence case but concentrated on the penalty phase, the overwhelming evidence of guilt overcame any possible *Strickland* prejudice); *Stone v. Green*, 796 F.2d 1366 (11th Cir. 1986) (allowing prejudicial introduction of prior convictions not sufficient to meet *Strickland* prejudice prong where evidence of guilt overwhelming); *Johnson v. Wainwright*, 778 F.2d 623 (11th Cir. 1985) (same as to failure to object to improper prosecution argument).

_____Thus, where the prosecution presents "overwhelming" or "compelling" or "undisputed" evidence, such as a confession, or convincing scientific or forensic

evidence, or multiple eye witnesses, habeas petitioners generally lose on the prejudice issue, because such evidence is sufficient to enhance, not undermine, confidence in the outcome.  This case does not involve such evidence.  Far from it, the state presented no confession, no forensic or medical evidence, no disinterested witnesses, and no psychological opinion other than that H. B. and K. B. suffered from post-traumatic stress disorder, but without ever directly attributing it to sexual abuse (F- 446-459).  The state's case rested entirely on two victims who in the past had made accusations against the petitioner and then immediately retracted them, who had alleged sexual abuse and then denied it, who had given sworn statements and depositions and later admitted they had perjured themselves, who had waited years before making the accusations that led to the defendant's prosecution, and who had numerous opportunities to report petitioner to friends and relatives, but who had never done so.  Obviously an unbiased jury would have been well within its rights to accept the victims' explanation of their contradictory claims, but this was not an unbiased jury.  This was a six person jury in which one juror had been similarly victimized and had stated that she could not give the defendant a fair trial.  Under these unique facts, this court's confidence in the outcome is severely strained.  Indeed, this case is strikingly similar to the facts in *Gearinger, supra*, where the Court presumed that jurors who are related to the victim or to a state witness "can be expected to sympathize with the victim and influence the other jurors against the defendant."  888 F.2d at 1338.  Because a fair and impartial jury is a due process right under the Fifth and Fourteenth Amendments and is a specific constitutional grant under the Sixth Amendment, the comparative weakness of the state's case severely undercuts the court's confidence in the outcome of the case, and if deficient performance were present, the court would favor granting the writ.  Therefore, if the court denies the writ and petitioner appeals this issue, the undersigned would recommend granting a certificate of appealability because

reasonable jurists would find the court's assessment of this claim debatable.  *See Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000).

   b. Failure to call favorable witnesses (Petitioner's Ground 2).

   Petitioner's second claim of ineffective assistance of counsel is grounded on his assertion that counsel should have called certain witnesses

> who were present and waiting to testify and could have proven that the alleged victims were lying and committing perjury . . . .  The excluded witness included several police officers and detectives that has investigated the allegations and found them to be false and fabricated in lurid, graphic detail.  It included Babb's wife and several other relatives that would have been direct eye-witnesses to things the alleged victims lied under oath about.  It included numerous child protection workers, counselors, therapists, psychologists, school officials, etc., that has spent years interviewing, evaluating and observing the alleged victims but never found any credible evidence of their allegations.

   The state court rejected this claim without an evidentiary hearing.  It held that the claim was facially insufficient because it failed to state specifically both the substance of the witness' testimony and how the defendant was prejudiced by counsel's failure to present the testimony, citing *Adams v. State*, 834 So.2d 302, 303 (Fla. 1st DCA 2003), and further found that the claims were conclusory and were insufficient to meet the *Adams* requirement (A-1090-91).  The court also held that, based on petitioner's general allegations of the nature of their testimony, the proposed testimony was "either cumulative of evidence already in the record or not relevant to the offenses for which the Defendant was convicted."  *Id.*

   Petitioner says that his attorney should have used the testimony of individuals who would say that the victims lied repeatedly before 1995.  However, the victims themselves conceded at trial, repeatedly, that they lied and that they lied repeatedly.  Any evidence from a third party that they had lied would have been cumulative.  An admission is much stronger evidence than an accusation, and the latter is all the witnesses could have offered.  The state court's ruling did not result "in a decision

that was contrary to, or involved an unreasonable application of, clearly established Federal law," 20 U.S.C. § 2245(d) (1); *Williams, supra*. Petitioner is not entitled to federal habeas relief, and the writ should not issue.

### c. Failure to use exculpatory evidence (Petitioner's Ground 5).

Petitioner next faults his attorney for failing to use "voluminous pictures, tapes, recordings, personal correspondence, documents, etc., that would have definitely impeached and exposed the perjured testimony of the alleged victims" which counsel told petitioner had been ruled inadmissible at sidebar.

The state court rejected this claim without an evidentiary hearing. It held that the petitioner's allegations did not specifically allege which statements would have impeached the victims' testimony, and that his claim was entirely conclusory. The court also found that because the victims admitted that they gave inconsistent stories to law enforcement and HRS, the evidence would have been inadmissible had counsel tried to introduce it (A-1090).

The only meaningful difference between this claim and the preceding one is that it involves written materials rather than witness testimony. The result is the same. The victims admitted that they had lied repeatedly, and the documents were cumulative. The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 20 U.S.C. § 2245(d) (1); *Williams, supra*. Petitioner is not entitled to federal habeas relief, and the writ should not issue.

### d. Failure to object to State's use of perjury (Petitioner's Ground 6).

Next petitioner claims that counsel allowed the state to present perjured testimony in the form of the victims' untruthful trial testimony, which conflicted with their earlier, truthful testimony that there had been no misconduct on petitioner's part, all of which denied him a fair trial and due process. Petitioner did not present this claim to the state court. All of the "facts" set out in this claim appear numerous times in his lengthy 3.850 motion, and there are innumerable and repeated

references to the fact that the victims' stories changed many times.  Nevertheless, he did not tell the state court specifically that his attorney rendered ineffective assistance by failing to object to the state's use of perjured testimony.

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[5] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, *supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard*, 404 U.S. at 277-78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In *Picard v. Connor*, *supra*, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal

---

[5]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)   the applicant has exhausted the remedies available in the courts of the State; or

(B) (i)   there is an absence of available State corrective process; or

(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.* at 278, 92 S.Ct. at 513, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  *Id.* 459 U.S. at 7, 103 S.Ct. at 278 (citing *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)).  The only manner in which the habeas petitioner had cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  *Anderson*, 459 U.S. at 7, 103 S.Ct. at 278 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  459 U.S. at 7 and n. 3, 103 S.Ct. at 278 and n. 3.

Years later, the Supreme Court readdressed the "fair presentation" requirement in *Duncan v. Henry*, *supra*.  The *Duncan* Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law

overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[6]  The Supreme Court explained,"[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." *Duncan*, 115 S.Ct. at 888.  Very recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004).  The *Baldwin* Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  *Id.*  This language, while not part of the Court's holding, provides an instructive and useful rule of thumb.

Prior to *Duncan*, the Eleventh Circuit broadly interpreted the "fair presentation" requirement.  *See, e.g., Watson v. Dugger*, 945 F.2d 367 (11th Cir. 1991) (finding issue to be exhausted when petitioner argued in state court that trial court misapplied state law when it refused to give petitioner's requested jury instruction and thereby allowed the jury to convict without necessary showing of criminal intent, and argued in federal court that this was a due process violation); *Mattox v. Dugger*, 839 F.2d 1523 (11th Cir. 1988) (holding that a federal habeas corpus petition should not be dismissed on grounds of procedural default when a petitioner has previously

---

[6]The petitioner in *Duncan* raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

brought an issue before a state court alleging only state law violations, when such a claim is equally supported by federal law, and the state cites such federal law in support of its position); *Hutchins v. Wainwright*, 715 F.2d 512, 518-19 (11th Cir. 1983) (petitioner exhausted Sixth Amendment confrontation clause claim in state court by raising hearsay objections, even though petitioner never raised Sixth Amendment claim in state court). However, after *Duncan*, the Eleventh Circuit has taken a more restrictive approach. For example, in *Zeigler v. Crosby*, the Circuit Court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the Federal Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The court specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause. *Id.* at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734. This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247

(11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991).  However, a petitioner may obtain federal review of his claim if the state procedural rule is applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

    To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  *Tower v. Phillips, supra.* To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  *Schlup*, 513 U.S. at 327.  Further:

        a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error

with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

In spite of petitioner's urging that this court to read such an ineffective assistance claim into his 3.850 motion, the claim is simply not there. That is, petitioner never specifically told the state court that his attorney's performance was ineffective because he failed to object to the victims' alleged perjury. Petitioner has not suggested any cause for his failure to present this claim, other than his *pro se* status, and he is not entitled to an actual innocence exception because he cannot meet the requisite burden. He argues that he was innocent, as he testified at trial, and that his daughters lied about the entire situation. Petitioner's testimony, as well as evidence attacking the credibility of the daughters' testimony, was presented at trial. Further, just as a reasonable jury could have believed the petitioner's testimony, a reasonable jury, or any reasonable member of a jury, could have disbelieved him and believed the victims, as happened. Thus, petitioner's bare assertions are simply not enough to satisfy the *Schlup* Court's "new evidence" and "actual innocence" requirements. Petitioner cannot show that this is one of the "extremely rare" cases in which a miscarriage of justice has occurred.

If the court were to consider the claim, petitioner still could not prevail. This argument is simply more of the same they-lied-before-so-they-must-be-lying-now argument he makes throughout his pleadings, with the additional claim that his attorney failed to object to the state using this perjured testimony. The question of who was truthful and who was not was uniquely within the province of the jury, and the jury has spoken. Petitioner obviously thinks his accusers lied, but the jury did not. There was no basis upon which counsel could have objected. The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 20 U.S.C. § 2245(d) (1); *Williams,*

*supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

      e.  <u>Failure to object to prosecutorial misconduct (Petitioner's Ground 7).</u>

      Next petitioner contends that his counsel failed to challenge prosecutorial misconduct, where the prosecution

> knowingly and maliciously engaged in a virtually incessant fusilade (sic) of untruthful, degrading derogatory and inflammatory attacks on Babb's character, his lawful marriage, and even the names of his children. They aggressively and repeatedly presented Babb's lawful marriage as evidence of guilt and told they jury names of Babb's children were "corroboration" of guilt. They unabashedly begged and pleaded for jury sympathy for the alleged victims. Even though Babb would pause in the course of his own testimony, to give trial counsel, Gregory Farrar, time to object to the flagrant prosecutorial misconduct, Farrar was so absolutely incompetent and ineffective that he made no objections, and the one feeble attempt he did make to defend against it was precluded by the trial court judge. . . .  Prosecutors made unrelenting assaults on Babb's character as being a vicious, violent criminal even though there was not a shred of evidence of any violence or injury to anyone at any time in Babb's past.

      Respondent argues that this claim was not presented to the state court for consideration and is procedurally defaulted.  Indeed, the order denying petitioner's Rule 3.850 motion did not address it.  Whether the court deems this claim to be procedurally defaulted or addresses the merits makes little difference.  Petitioner is not entitled to federal habeas relief on this claim.

      It is long established Supreme Court law that prosecutors must refrain from improper methods calculated to produce a wrongful conviction; they may strike hard blows but are not at liberty to strike foul ones.  *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 74 L.Ed.2d 1314 (1935).  "A lawyer shall not . . . state a personal opinion as to . . . the credibility of a witness . . . or the guilt or innocence of an accused" and shall not "use arguments calculated to inflame the passions or prejudices of the jury."  *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464,

2471, 91 L.Ed.2d 144 (1986) (citing Model Rules of Professional Conduct, Rule 3.4(e) (1984); Code of Professional Responsibility, DR 7-106(c)(4) (1980); ABA Standards for Criminal Justice: 3-5.8(b) (2nd Ed. 1980)).

It is true that the prosecution was aggressive in this case, but that did not make its actions constitutionally wrong. Fundamental to petitioner's argument here is that he is innocent and that there was no evidence to the contrary. That simply is not true, as discussed above. There was nothing in the prosecution's action that overstepped the line, nor has petitioner pointed to anything specific, beyond his conclusory allegations, that the prosecution did so. And indeed there was considerably more than a shred of evidence that petitioner was a violent man. H. B. testified that he raped her, held a gun to her head, and threatened to kill his wife and all three of his daughters. Both victims testified that petitioner beat H. B. often with a belt covered with tape and with a hose, and would choke her (F- 301, 363), and K. B. testified that he threatened to kill H. B's husband. He cut a pumpkin in half to show how he proposed to do it. There was evidence to support the prosecution's tactics and the jury believed the victims. Defense counsel did not object and had no reason to object since the prosecutor's remarks were consistent with the evidence. Accordingly, petitioner is not entitled to relief on this claim of ineffective assistance. *See, e.g., Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (denying relief on ineffective assistance claim based on counsel's failure to object to various comments of prosecutor where comments were not improper); *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("It is axiomatic that the failure to raise non-meritorious issues does not constitute ineffective assistance.").

f. Failure to request severance of charges (Petitioner's Ground 8).

As his last ineffective assistance of counsel claim petitioner contends that his attorney should have tried to sever the charges as between H. B. and K. B., because both of them testifying at trial was very prejudicial. The state court held an evidentiary hearing on this issue, and found that defense counsel's testimony was

credible and that his decision not to move to sever was based on reasonable strategy.  The state court found that counsel discussed the possibility of severing the two cases with petitioner but recommended against it, with which petitioner concurred.  Counsel recognized that if the cases were tried separately, both victims would testify, one as a victim and one as a similar crimes witness under Florida's *Williams*[7] rule, codified at 90.404 (2)(a), and that this would give the state two shots at a conviction and would subject the petitioner to possible consecutive sentences (A-1092).

The state court's decision was well supported factually by counsel's testimony, and counsel's strategic decision to lessen the possibility of multiple convictions and consecutive sentences was reasonable, as the state court found. Petitioner cannot show either deficient performance or prejudice on this claim.  The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 20 U.S.C. § 2245(d) (1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

    2.    <u>Denial of right of self-representation (Petitioner's Ground 3).</u>

Petitioner's next ground is founded on trial court error.  He asserts that he wanted to represent himself, that he was a trained private investigator and graduate law enforcement trainee, and that the state and the court conspired to deny him that right.  The respondent concedes that this claim was presented to the state court.

The state court addressed the claim as follows:

[T]he Defendant's allegation in ground sixteen that both the Court and the State denied the Defendant his right to self representation because "there was never the slightest legitimate concern that the Defendant was incompetent to represent himself" is also conclusively refuted by the record. In fact, the record in the instant case reflects an ongoing concern regarding the Defendant's competency by the numerous

---

[7]*Williams v. State*, 110 So.2d 654 (Fla. 1959).

competency evaluations conducted prior to the Defendant's trial. The official record reflects that the first motion for a competency evaluation was filed on October 31, 1995. At the Defendant's competency hearing on January 24, 1996, resulting in the Court finding the Defendant competent to proceed, the Court ordered a Faretta hearing after the Defendant unequivocally indicated that he wished to exercise his right of self representation. After a lengthy Faretta hearing on February 22, 1996, the Court found the Defendant incompetent to represent himself at trial, at which time the Defendant voluntarily accepted the assistance of appointed counsel. Furthermore, the Court found the Defendant competent to proceed to trial only with the assistance of appointed counsel. Again on June 24, 1996, the Defendant's behavior outside the courtroom raised concerns regarding his competency and the Court scheduled an emergency competency hearing on August 12, 1996. At the emergency hearing the Court found the Defendant incompetent to proceed and involuntarily committed him to the Department of Health and Rehabilitative Services for treatment. The Defendant remained hospitalized intermittently until January 1998, and was subsequently found competent to proceed on June 29, 1998. Consequently, the Defendant's allegations that the Court and the State denied the Defendant his right to self-representation are conclusively refuted by the record.

(A-1085-1086.)

<u>Clearly Established Federal Law.</u>

Petitioner's claim that he was denied the right of self-representation is grounded in *Faretta v. California*, 422 U.S. 806, 819, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975), in which the Supreme Court held that the Sixth Amendment "grants to the accused personally the right to make his defense."  Unlike the criminal defendant's right to counsel, which is in effect until waived, the right to self-representation is not effective until affirmatively asserted.  Invocation of the right of self-representation requires that the defendant also waive his right to counsel.  A defendant should be permitted by a court to represent himself only when he "knowingly and intelligently" relinquishes his right to counsel by making a "clear and unequivocal" assertion of his right of self-representation.  422 U.S. at 835, 95 S.Ct. at 2541.  The right to counsel is preeminent, and courts must indulge every

reasonable presumption against waiver of counsel. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1937).  In the absence of a clear election, a court "should not quickly infer that a defendant unskilled in the law has waived counsel and has opted to conduct his own defense."  *Brown v. Wainwright*, 665 F.2d 607, 610 (Former 5th Cir. 1982) (en banc); *see also Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1976).  When a defendant wishes to proceed without counsel, the court should make him "aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open."  *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541.

<u>Federal Review of State Court Decision</u>

As stated above, to invoke the right to self-representation under *Faretta*, a defendant must "clearly and unequivocally" assert that right.  The Eleventh Circuit has interpreted this to mean that a "petitioner must do no more than state his request, either orally or in writing, unambiguously to the court so that no reasonable person can say that the request was not made."  *Stano v. Dugger*, 921 F.2d 1125, 1143 (11th Cir.), *cert. denied*, 502 U.S. 835, 112 S.Ct. 116, 116 L.Ed.2d 85 (1991) (quoting *Dorman v. Wainwright*, 798 F.2d 1358 (11th Cir. 1986), *cert. denied*, 480 U.S. 951, 107 S.Ct. 1616, 94 L.Ed.2d 801 (1987)).  When evaluating a defendant's request to represent himself, a trial court must "traverse . . . a thin line" between improperly allowing the defendant to proceed pro se, thereby violating his right to counsel, and improperly having the defendant proceed with counsel, thereby violating his right to self-representation.  *Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir. 1990), *cert. denied*, 498 U.S. 849, 111 S.Ct. 138, 112 L.Ed.2d 105 (1990).  On collateral review, the entire record must be reviewed to determine an unequivocal demand for self-representation.  *Id*. at 1291.

A defendant who initially requests to waive counsel may subsequently abandon or waive the waiver.  *Dorman*, 798 F.2d at 1365, n.15; *Brown*, 665 F.2d at

611.  This may be accomplished through the defendant's explicit request or deduced from his subsequent conduct which reasonably shows that he has abandoned his original request.  *Brown*, 665 F.2d at 611.  For example, a defendant who vacillates on the issue or continues to seek the benefit of representation may be found to have relinquished his initial request.  *Id.* (citing cases).   While a defendant need not "continually renew his request to represent himself even after it is conclusively denied by the trial judge, *Brown*, 665 F.2d at 612, he must pursue the matter diligently." *Raulerson v. Wainwright*, 732 F.2d 803, 809 (11th Cir. 1984), *cert. denied*, 469 U.S. 966, 105 S.Ct. 366, 83 L.Ed.2d 302 (1994); *Dorman*, 798 F.2d at 1365 n.16. The request may be considered abandoned if the court leaves the matter open and the defendant fails to re-assert his request.  *Brown, supra*.  On the other hand, once a defendant has made an unequivocal assertion of his right to represent himself and the trial court enters a definitive ruling denying the request, he need not "make fruitless motions or forego cooperation with defense counsel" to show he has not abandoned his request or acquiesced to proceeding with counsel.  *Orazio v. Dugger*, 876 F.2d 1508, 1512 (11th Cir. 1989); *Dorman, supra* at 1367; *Brown, supra* at 612.

The state court's review and analysis of the record is precisely correct.  Petitioner was given every possible consideration under the *Faretta* doctrine, and ultimately agreed to proceed with appointed counsel as his representative.  The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 20 U.S.C. § 2245(d)(1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

3.    Double jeopardy (Petitioner's Ground 4).

Petitioner's next assignment of trial court error is based on double jeopardy.  He says that he had previously been convicted of battery based on the same allegations made by his daughters in the sexual battery trial, and that prosecuting him on the same facts was a constitutional violation.  The state court found this

claim to be facially insufficient because petitioner's pleadings did not allege facts regarding his prior battery conviction necessary to dispose of the claim.

Clearly Established Federal Law.

"The Double Jeopardy Clause of the Fifth Amendment provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" *Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 306, 104 S.Ct. 1805, 1812, 80 L.Ed.2d 311 (1984).   This guarantee is applicable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).  The Double Jeopardy Clause embodies three separate guarantees: "It protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense."  *Justices*, 466 U.S. at 307-08, 104 S.Ct. at 1812 (citation and footnote omitted).  "[T]he bar to retrial following acquittal or conviction ensures that the State does not make repeated attempts to convict an individual, thereby exposing him to continued embarrassment, anxiety, and expense, while increasing the risk of an erroneous conviction or an impermissibly enhanced sentence."  *Ohio v. Johnson*, 467 U.S. 493, 498-99, 104 S.Ct. 2536, 2540, 81 L.Ed.2d 425 (1984) (citations omitted).

In the contexts of both multiple punishment and successive prosecution, the double jeopardy bar applies if the two offenses for which the defendant is punished or tried cannot survive the "same-elements" or "*Blockburg*er" test.  *United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993) (citing *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)). This test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution."  *Dixon*, 509 U.S. at 696, 113 S.Ct. at 2856. Although this court will decide under federal law whether a double jeopardy violation has occurred, it must accept Florida courts' interpretation of that state's own

statutes.  *Tarpley v. Dugger*, 841 F.2d 359, 364 (11th Cir. 1988) (citing *Missouri v. Hunter*, 459 U.S. 359, 368, 103 S.ct. 673, 679, 74 L.Ed.2d 535 (1983)).

Federal Review of State Court Decision.

Petitioner's claim here suffers from the same defects found by the state court, because he is long on generalities and short on specifics.  He disputes this, stating that he provided the state court with detailed, specific information concerning his double jeopardy claim in his 3.850 motion, and in his reply brief here he points to that motion, and specifically to pages 541-570.  His contention there was that after being charged with five counts of felony child abuse, and to avoid being convicted in a kangaroo proceeding in which the judge, the prosecutors and multiple state agencies, but particularly HRS, were involved, he agreed to plead guilty to five counts of misdemeanor battery.  He further contends that these convictions arose from the same incidents involving the same victims that served as the basis for the subsequent sexual battery convictions, contested here.

The court has reviewed petitioner's original 3.850 motion with care, and must come to the same conclusion as the state court.  Petitioner is correct when he says that he identified the same victims as being the victims in both prosecutions.  However, his assertion that the two prosecutions arose out of the same incidents is not supported by the facts he has provided.  For example, the convictions under review here involved, among other things, sexual battery against H. B. over a period of years.  The trial testimony from the victim was that petitioner sexually assaulted her repeatedly over a period of years.  Yet petitioner fails to show that the battery convictions arose out of the exact same incidents.  He alleges it, but he does not prove it.  Indeed the trial transcript shows that petitioner sexually assaulted H. B., but that he also beat her with a belt and a rubber hose.  For all that appears, the battery convictions were based on the latter, and the sexual battery conviction was based on the former.  Florida courts do not consider "battery" and "sexual battery" as variants of the same core offense.  *Herrera v. State*, 879 So.2d 38 (Fla. 4th DCA

2004) (defendant can be convicted of both sexual battery and battery); *Beltran v. State*, 700 So.2d 132, 135 (Fla. 4th DCA 1997); *Bradham v. State*, 657 So.2d 40 (Fla. 1st DCA 1995) (convictions for aggravated battery and sexual battery did not place defendant in double jeopardy, since sexual battery required sexual attack, which aggravated battery did not, and aggravated battery required actual infliction of great bodily harm, permanent disability, or permanent disfigurement, which sexual battery did not); *Crawford v. State*, 666 So.2d 202 (Fla. 2nd DCA 1995) (convictions for aggravated battery and sexual battery with great force or deadly weapon did not violate proscription against double jeopardy, in light of evidence of distinct act of aggravated battery, separate from sexual battery); *compare* Fla. Stat. § 784.03(1)(a) *with* § 794.011. However, if the battery is based on the same acts that form the basis for the sexual battery, double jeopardy prohibits dual convictions. *Herrera v. State, supra*.

It is not for this court to determine the factual basis for the misdemeanor battery convictions, however. The burden is, and was in the state court, on petitioner to come forward with proof that the two prosecutions arose out of the exact same incidents. He has not done so. He has not provided the court with copies of the original charging documents for the battery convictions, nor has he provided a transcript of the plea colloquy, which might shed light on the specifics of the crimes he pleaded to. Rather, he has given this court, as he gave the state court, a lengthy explanation of how both prosecutions resulted from a wide-ranging conspiracy to convict him whatever the cost, but he has failed in the necessary specifics. In short, if he is to prove double jeopardy, he must come forward with proof that the battery convictions were based not on beatings with a belt or a rubber hose or on some other incident, but on the same sexual assaults for which he was later convicted. *Woodford v. Viscotti*, 537 U.S. 19, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) ("[I]t is the habeas applicant's burden to show that the state court applied [the applicable Supreme Court law] to the facts of his case in an objectively

unreasonable manner."); *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001) ("A petitioner has the burden of establishing his right to federal habeas relief and of proving all facts necessary to show a constitutional violation."). Petitioner has therefore failed to show that the state court's ruling resulted from "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 20 U.S.C. § 2245(d) (1); *Williams, supra*. Petitioner is not entitled to federal habeas relief, and the writ should not issue.

4. <u>Denial of right to speedy trial (Petitioner's Ground 9).</u>

Finally, petitioner claims that his speedy trial right was abridged. He says that the charges were first brought to the attention of law enforcement in 1995, that the first information against him was filed in October of that year, that the third and final information was filed almost three years later in April 1998, and that his trial did not begin until January 1999. This issue was raised on direct appeal and was affirmed without discussion of the claim other than a statement that "[t]hose arguments that have been preserved for appellate review are without merit." (A-331). Respondent contends that it is not reviewable here because it was presented to the state appellate court as a state law issue only.

Respondent is correct. In his direct appeal petitioner claimed that the trial court erred in not dismissing the charges against him when the third amended information "was filed in violation of his constitutional due process right to a speedy trial." (c)-27). In support of his claim he argued first that the state should have prosecuted him when the first allegations were made by H. B. in 1991, rather than in 1995 when the first information was filed. He cited only to Florida law, other than in a string citation that included *United States v. Townley*, 665 F.2d 579 (5th Cir. 1982), which supported his claim that once the "threshold requirement of actual prejudice is met, the court must balance the need for investigative delay against the prejudice." (c)-30). Toward the end of his brief he said that "the delay caused a violation of Babb's state and federal constitutional rights to due process of law."

(c)-31).  This is insufficient the meet the "fair presentation" requirement of *Anderson v. Harless, supra*.

And even if a federal claim had been presented, it is without merit.  In *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) the Court held that the primary guarantee against staleness is provided by statutes of limitation, but that due process requires dismissal where pre-indictment delay causes substantial prejudice and "the delay was an intentional device to gain tactical advantage over the accused."  404 U.S. at 324, 92 S.Ct. at 465.  In *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) the Court held that a reviewing court may find prejudice only where there is a violation of "fundamental conceptions of justice", 431 U.S. at 791, 97 S.Ct. at 2049, or "elementary standards of fair play and decency."  431 U.S. at 795, 97 S.Ct. at 2051.

Neither of those is present here.  Petitioner's claims center around two basic time periods: (1) from 1991 when allegations of sexual abuse first arose until the filing of the first information in 1995, and (2) from the first information in 1995 until trial in early 1999.  The delay between 1991 and 1995 was occasioned not by the state, but by the complaining witness' repeated charges followed by recantations.  The state had no evidence upon which to prosecute for sexual battery until H. B. finally came forward and told the whole story in a manner that the state was willing to accept, and upon which it felt it could obtain a conviction.  To argue that the state should have prosecuted based on her earlier, recanted testimony is preposterous, because when the victim recanted, the only proof that the state had was that no crime had occurred.

The second period of delay was occasioned by at least two things, neither of which were in the state's control: petitioner's dissatisfaction with his attorneys and his requests for new ones, and the various proceedings concerning petitioner's mental competence, including his lengthy hospitalization.  Petitioner contends that the delay prejudiced him, and was caused by the state's desire to gain tactical

advantage over him, but his accusations of conspiracy and kangaroo courts are not proof, and the record does not support the accusations.   The state court held multiple competency hearings, and its findings were well supported by the opinions of mental health professionals.   This court's review of all the commitment proceedings has not uncovered any factual basis for petitioner's allegations. Therefore, the state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 20 U.S.C. § 2245(d) (1); *Williams, supra*.   Petitioner is not entitled to federal habeas relief, and the writ should not issue.

## CONCLUSION

The court has carefully reviewed the entire trial transcript, the records of proceedings on petitioner's motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850, and all submissions in this proceeding.   Petitioner protests his innocence, and argues that if his lawyer had only shown the jury how much the victims had been untruthful, he would have been acquitted.   The jury was well informed of the victims' history of changing their testimony, even under oath.   It accepted the victims' explanation that they could not stick to a story that accused their father of wrongdoing when they knew that HRS would ultimately return them to his custody, or to the custody of their mother who would allow petitioner access to them.   This would in turn result in more punishment and more threats.   It was the jury's function to decide whom to believe.   Petitioner has failed to show in any of his claims for federal habeas relief that the state court's rulings were contrary to, or involved an unreasonable application of, clearly established Federal law.

Accordingly, it is respectfully RECOMMENDED that the petition for writ of habeas corpus, (doc. 1) challenging the conviction and sentence in the case of *State*

*of Florida v. Hubert Babb*, in the Circuit Court of Escambia County, Florida, case no. 95-4637, be DENIED, and that the Clerk be directed to close the file.

At Pensacola, Florida this 4th day of November, 2005.


/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).